DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Melinda Kuhn, appeals from her convictions in the Lorain County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On December 29, 2004, Appellant was indicted for one count of possession of cocaine, in violation of R.C. 2925.11; one count of endangering children, in violation of R.C. 2919.22(A); and one count of possession of drug abuse paraphernalia, in violation of R.C. 2925.14(C)(1). Appellant pled not guilty to the charges in the indictment. Appellant agreed to consolidate her case with that of her husband and she waived her rights underBruton v. United States (1968), 391 U.S. 123. Her case proceeded to a bench trial on September 21, 2005. After the State rested its case, Appellant made a Crim.R. 29 motion and the court dismissed the child endangering charge. The following day the trial court found Appellant guilty of possession of cocaine and possession of drug abuse paraphernalia.
 {¶ 3} Appellant appealed her convictions, asserting one assignment of error.
 II. ASSIGNMENT OF ERROR
"THE CONVICTION OF [APPELLANT] FOR POSSESSION OF COCAINE AND POSSESSION OF DRUG ABUSE PARAPHERNALIA WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 4} In her sole assignment of error, Appellant argues that her convictions were against the manifest weight of the evidence. We disagree.
 {¶ 5} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
"[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
 {¶ 6} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than it supports the other. Statev. Thompkins (1997), 78 Ohio St.3d 380, 387 (reversed on other grounds). Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. at 388. An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court. Karches v. Cincinnati (1988), 38 Ohio St.3d 12,19. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Martin (1983), 20 Ohio App.3d 172, 175; see also, Otten,33 Ohio App.3d at 340.
 {¶ 7} Appellant was convicted of possession of cocaine in violation of R.C. 2925.11(A). Pursuant to R.C. 2925.11(A), "[n]o person shall knowingly obtain, possess, or use a controlled substance." Appellant was also convicted of violating R.C.2925.14(C)(1), which states: "No person shall knowingly use, or possess with purpose to use, drug paraphernalia." R.C. 2901.22(B) defines "knowingly" as follows:
"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 8} Possession is defined as
"having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).
 {¶ 9} R.C. 2901.21(D)(1) sets forth the requirements for criminal liability and provides: "Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession."
 {¶ 10} "Possession may be actual or constructive." State v.Kobi (1997), 122 Ohio App.3d 160, 174. Constructive possession has been defined as "knowingly [exercising] dominion and control over [the drugs and manufacturing items], even though [they] may not be within his immediate physical possession." State v.Hankerson (1982), 70 Ohio St.2d 87, syllabus. See also, Statev. Wolery (1976), 46 Ohio St.2d 316, 329. Furthermore, ownership need not be proven to establish constructive possession. Statev. Mann (1993), 93 Ohio App.3d 301, 308. Circumstantial evidence is sufficient to support the elements of constructive possession. See State v. Jenks (1991), 61 Ohio St.3d 259, 272-73.
 {¶ 11} During the trial, the State presented testimony from two members of the Lorain Police Department ("LPD") and submitted as evidence a Bureau of Criminal Identification and Investigation report, a chore boy, syringes, a charred chore boy, a metal and glass pipe, a spoon, and baggies.
 {¶ 12} Sergeant James Wolford of the LPD testified to the following: In October 2004, Officer Palmer, also of the LPD, requested his assistance at Appellant's residence. Officer Palmer had been dispatched to the house to check on the welfare of a child and to investigate possible drug abuse in the home. When Sgt. Wolford arrived at the house, Officer Palmer showed him a crack pipe, spoons, and other drug related items that were retrieved from the house. Appellant and her husband both denied that there were any drugs in the house or that either one used drugs. Sgt. Wolford testified that Appellant gave complete consent to search the house. Sgt. Wolford testified that after he obtained consent, he searched the house. During the search, the couple's daughter pointed out an area in the basement where she believed her parents were doing drugs. Sgt. Wolford testified that when they started to search the basement, the couple tried to limit the consent they had already given.
 {¶ 13} Sgt. Wolford identified the items found and explained that a chore boy is a copper mesh wire that is used to block the end of a crack pipe. Sgt. Wolford testified that the charring on the chore boy shows that it was used inside an instrument to smoke crack cocaine and the charring comes from the lighter. He identified used syringes from inside Appellant's basement and testified that such needles are used to inject heroin or cocaine directly into a vein. Sgt. Wolford identified two crack pipes and a spoon found in Appellant's house. He stated that these items were given to the police by Appellant's daughter. He identified plastic baggies, cellophane used to hold drugs and "other paraphernalia" and testified that such items are used to hold illegal drugs. He conducted field tests on the baggies, the spoon, the crack pipes, and one of the chore boys recovered from Appellant's house and each resulted in a presumptive positive test for cocaine.
 {¶ 14} As a preliminary matter, we find it clear from the BCI report and the testimony that the items seized were illegal drugs and drug paraphernalia as prohibited by R.C. 2925.11 and R.C.2925.14(C)(1); therefore, the only issue remaining is possession.
 {¶ 15} Sgt. Wolford testified that Appellant's husband had been arrested on an unrelated matter and was placed in the back of a cruiser. After the evidence was collected, Appellant's husband told Sgt. Wolford that the "needles and spoon had belonged to him, but the crack pipes, the tubes, belonged to his wife."
 {¶ 16} Officer Palmer of the LPD testified to the following for the State: He responded to a call to check the welfare of a child at Appellant's residence on October 14, 2004. Officer Palmer testified that he first spoke with the daughter and then with Appellant and her husband. Officer Palmer told Appellant and her husband that he heard of possible drug use in the house and Appellant's husband responded by telling Officer Palmer to check the house. Officer Palmer testified that Appellant's husband told him that "he didn't use any drugs other than they drank beer and the only drugs he used was what was prescribed by his physician because he has a heart condition." Officer Palmer then obtained permission to search the house for drugs.
 {¶ 17} Officer Palmer further testified that he asked for and received permission from Appellant to speak to her daughter alone. After this conversation Appellant's daughter went back into the house and came back out with a crack pipe and a spoon. Officer Palmer stated that Appellant's daughter was upset and crying and described her to be overall in an "excited state." Further, Officer Palmer testified that Appellant's daughter told him that she was sorry, but she could not take it anymore and then she slammed the items on the coffee table. Officer Palmer testified that such items are used to consume drugs. After Sgt. Wolford field tested the items and they tested positive for cocaine, Officer Palmer informed Appellant about the results and that the items were found in the basement. Officer Palmer testified that upon hearing where the items were found, Appellant and her husband "both excitedly said, you are not checking the basement." Officer Palmer further testified that this statement "really raised [his] suspicions [.]" After conferring with Sgt. Wolford, Officer Palmer told Appellant and her husband they were checking the basement.
 {¶ 18} Around that same time, Officer Palmer's warrant checks on the couple came back. Appellant's husband had an active warrant and thus was placed under arrest and put into a patrol car. Soon after, Appellant stated that she knew her husband did drugs, but that he left the residence when he did it. Appellant then gave consent to search the basement. Officer Palmer went to the basement and noticed a box with an open lid with several used and unused needles in it; he also found a metal pipe; a chore boy; tubes; and clear baggies, some with knots, all with a white powdery substance.
 {¶ 19} Officer Palmer testified on cross-examination that he did not know how long the items had been in the basement, but they did not have a lot of dust on them.
 {¶ 20} The State's exhibits were admitted into evidence and the State rested its case. The State's exhibits included a BCI report that showed that the glass pipe recovered from the basement tested positive for cocaine and that residue from two of the clear baggies tested positive for cocaine. Appellant then made a Crim. R. 29 motion and the trial court denied the motion as to the possession of cocaine and possession of drug abuse paraphernalia, but granted it on the child endangering charge. Appellant rested her case without presenting any testimony or evidence.
 {¶ 21} After careful review of the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, this Court cannot conclude that the trial court clearly lost its way when it found Appellant guilty of possession of cocaine and possession of drug abuse paraphernalia. The record contained evidence from which the trial court could have found that Appellant knowingly possessed, either actually or constructively, cocaine and the drug abuse paraphernalia. The trial court was in the best position to evaluate the credibility of witnesses and give proper weight to their testimony. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Appellant's conviction was not against the manifest weight of the evidence simply because the trial court chose to believe the testimony of the State's witnesses over insinuations that the items and drugs belonged to someone else or had been left in the house by previous residents. Moreover, "in reaching its verdict, the [trial court] is free to believe, all, part, or none of the testimony of each witness."Prince v. Jordan, 9th Dist. No. 04CA008423, 2004-Ohio-7184, at ¶ 35, citing State v. Jackson (1993), 86 Ohio App.3d 29, 33. As the factfinder, the trial court was entitled to reconcile any differences and inconsistencies in the testimony and determine that the manifest weight of the evidence supported a finding of guilt. See DeHass, supra.
 {¶ 22} We are not persuaded by Appellant's argument that the evidence failed to show that she knowingly possessed the illegal items and drugs. The fact that Officer Palmer could not determine when the items had been used or by whom or how long the items had been in the basement does not mean that Appellant did not possess them. As previously discussed, a person may knowingly possess a substance or object through either actual or constructive possession. State v. Hilton, 9th Dist. No. 21624,2004-Ohio-1418, at ¶ 16. Further, circumstantial evidence is sufficient to establish possession. See Jenks, supra.
 {¶ 23} The trial testimony established that the drugs and drug paraphernalia were found in Appellant's basement. The testimony also showed that Appellant consented to the search of her house until she learned that the police were going to search the basement. She then attempted to limit her consent. This heightened the suspicion of the police and led them to conclude that Appellant knew what was in the basement. Moreover, Appellant stated that she knew that her husband used drugs, but that he left the house to do so. Further, the testimony showed that Appellant's husband stated that while the needles and spoon with white residue on it belonged to him, the crack pipes and tubes belonged to Appellant. The evidence showed that Appellant had possession, either actual or constructive, over the drugs and drug paraphernalia found in the basement.
 {¶ 24} Based on the foregoing, this Court cannot find that Appellant's convictions were against the manifest weight of the evidence. Thus, Appellant's sole assignment of error is overruled.
 III. {¶ 25} Appellant's sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J. Whitmore, J. Concur.